Burke, J.
In January, 1958 the Joint Legislative Committee on Government Operations of the New York State Legislature and the Commissioner of Investigations of the State of New York commenced inquiries into law-enforcement practices of *196 the City of Utica. In June the Attorney-General superseded the District Attorney of Oneida County in certain areas of investigation and prosecution, including public offices, prostitution, bribery and official corruption. Thereafter, an Original Grand Jury was impaneled in November in connection with the Extraordinary Special and Trial Term of Supreme Court, Oneida County. In January and February of 1959 this Grand Jury returned felony indictments charging Irene Burke and Lee Clarke with operating houses of prostitution. They were convicted of the crimes charged in May, and, after exhausting appellate review, they testified before the Original and the Additional Grand Jury concerning official protection of their operations in Utica. As a result of this testimony and certain wire intercepts of telephone conversations, introduced at their trial, the Additional Grand Jury indicted appellants in July, 1960.
The indictment charged Fiore, former Senior Deputy Chief of Police of the City of Utica, with aiding and abetting Irene Burke in receiving the proceeds of prostitution by protecting her from danger of arrest from August, 1954 through December, 1956, and during November, 1957. Fiore and the appellant police officers under his command, Bogan, Macner, Custodero and Fragetta, were charged with falsely testifying under oath before Oneida County Grand Juries and the Office of the Attorney-General that they had no knowledge that houses of prostitution were operating in Utica. Fiore, and O’Dowd, a political figure and city official in Utica, were charged in separate counts with attempting to procure Irene Burke to withhold testimony from investigating bodies; and O’Dowd was also charged with bribing Irene Burke during the period from October to December, 1959 to withhold testimony from the Original Grand Jury. Finally, all of the appellants were charged with conspiring to obstruct justice from December, 1957 to July, 1960, in that they attempted to conceal from the investigating bodies inquiring into vice and official corruption in Utica the existence of a prior conspiracy, between the appellants and Irene Burke, to protect Burke’s prostitution operations.
The People contend that the appellants were parties to a conspiracy which, existed from August, 1954 to November, 1957 for the purpose of permitting Irene Burke to operate houses of prostitution in Utica without danger of- arrest. Allegedly, *197 O’Dowd gave her permission to operate with the consent of Fiore. Bogan, Macner, Custodero and Fragetta aided in the conspiracy through affirmative acts in furtherance of Burke’s criminal activities and through their failure to enforce the prostitution laws or disclose knowledge of her prostitution operations. Thereafter, appellants, in order to conceal their relationships with Irene Burke from the afore-mentioned Commissioner of Investigations, the Joint Legislative Committee, and the Oneida County Grand Juries, agreed to deny knowledge of the existence and operation of houses of prostitution in Utica, to give false and evasive testimony in relation thereto and to attempt to prevent Irene Burke from disclosing to these investigating bodies her arrangement with appellants.
The proof of the crimes charged consisted of the testimony of Irene Burke and Lee Clarke, denominated as co-conspirators and accomplices, the testimony of prostitutes and other non-accomplice witnesses, the contents of certain telephone conversations intercepted and recorded by Bogan and Macner, and the sworn testimony of Fiore,. Bogan, Macner, Custodero and Fragetta before the Commissioner of Investigations, the Joint Legislative Committee and the Oneida County Grand Juries.
Aware of the importance of determining the sufficiency of the evidence as to each defendant in mass conspiracy trials, we find that there is more than enough legal evidence to support the convictions of (a) Fiore, Bogan, Macner, Custodero and Fragetta for committing perjury, (b) Fiore and 0 ’Dowd for attempting to procure Burke to commit perjury, (c) O’Dowd for bribing Burke to influence her testimony before the Grand Jury, and (d) all of the appellants, except O’Dowd, for conspiring to obstruct justice.
The evidence supports the determination that the police officers agreed to lie about their knowledge of prostitution operations in Utica, and negates the likelihood ‘ ‘ that each [officer] decided for himself that it would be wiser not to discuss all that he knew” (United States v. Bufalino, 285 F. 2d 408, 411 415). The chain of command connecting the police officers, exhibited by Fiore’s control over the Confidential Squad (Bogan and Macner) and the Pawnshop Detail (Custodero and Fragetta), becomes forged into a conspiratorial bond through evidence of the arrangements made by the police to hospitalize a *198 witness subpoenaed by the Grand Jury investigating vice in Utica, their efforts to compel the prostitutes to leave Utica, their concerted perjuries and the police officers’ admissions that they discussed and co-ordinated their testimony before the Grand Jury. However, the necessary link connecting the criminal activities of O’Dowd with the conspiratorial scheme of the police officers is missing. The testimony of Burke and the other witnesses reveals that 0’Dowd’s sole concern and efforts were in his own behalf and not that of his alleged co-conspirators. There is no testimony implicating O’Dowd with any of the other appellants or with their testimony before any investigative body or agency. The People have not adequately established his guilt of this charge independent of his participation in the antecedent conspiracy.
Fiore’s motion to dismiss the count charging him with violating the Penal Law (§§ 2, 2460, subd. 8) —aiding and abetting Irene Burke in the crime of knowingly receiving money from proceeds earned by women engaged in prostitution — should .have been granted.
The testimony of Irene Burke, an accomplice, showed quite clearly that Fiore was a puppet in the conspiracy protecting Burke’s operations, and not the puppeteer as were the defendants in People v. McKane (143 N. Y. 455); People v. Becker (215 N. Y. 126); People v. Luciano (277 N. Y. 348), and People v. Hines (284 N. Y. 93). At the outset he informed her that he did not have the power to grant her permission to operate a house of prostitution, since he was “ only a police officer ” — a clear indication that he was subject to the orders and directions of another. At later stages of the operation her activities were suspended without his knowledge and in spite of his wishes. He was, according to Burke, unable to make commitments until he had consulted with an unidentified person or persons. Although Fiore was derelict in his duty by doing nothing to interrupt or prevent Burke’s unlawful business, such dereliction does not constitute a violation of section 2 of the Penal Law with regard to subdivision 8 of section 2460 of the Penal Laav. The principal object of section 2460 is “ to get the tycoons of organized vice * * * men such as the defendant in People v. Luciano (277 N. Y. 348) * * * to punish those ‘ conscience-less vampires who make merchandise of the passions of *199 men ’ (People v. Draper, 169 App. Div. 479, 484, per Woodward, J.) ” (People v. Jelke, 1 N Y 2d 321, 326).
The corroborating evidence relied upon by the prosecution does not satisfy the requirements demanded by section 399 of the Code of Criminal Procedure. The testimony of the prostitutes did not tend to indicate that it was Fiore who aided and abetted Burke. Proof of perjurious statements and his efforts to induce Burke to commit perjury merely established the fact of an acquaintanceship with Burke; it did not indicate the nature of their relationship. Hence, there is no competent evidence in the record which supports a conviction for the commission of the crime defined in section 2 of the Penal Law as applied to subdivision 8 of section 2460 of the Penal Law.
Appellants argue that, even if the evidence is sufficient, reversible error was committed when the trial court permitted the People to utilize a “ conspiracy device ” for the purpose of introducing into evidence transactions and conversations otherwise inadmissible. This “ conspiracy device ” consisted of charging the appellants with conspiring to conceal from various investigating bodies the existence of a prior conspiracy, not charged in the indictment and prosecution for which was barred by the Statute of Limitations. It is urged that, if appellants cannot be prosecuted for committing a particular crime, the evidence proving the commission of the crime is inadmissible, and the admission of such evidence, regardless of the scheme used, is prejudicial and constitutes error.
It is, of course, axiomatic that evidence improperly admitted cannot be used to sustain a conviction. But proof of the conspiracy charged in the indictment is not designed to convict appellants for their participation in the prior conspiracy to protect the operations of the houses of prostitution. Therefore, the reasoning in Krulewitch v. United States (336 U. S. 440) and Grunewald v. United States (353 U. S. 391) is not applicable. In those cases the Q-overnment sought to avoid the bar of the Statute of Limitations on the theory that the original conspiracy continued; here the People allege a new conspiracy, not a continuation of the old one. Nor is the present case governed by the principles laid down in Kotteakos v. United States (328 U. S. 750) and People v. Abelson (309 N. Y. 643). The conspiracies here are not interdependent as in those cases, but are separate *200 and distinct. The conspiracy charged was entered into in order to cope with the threat presented by the new investigative bodies. That this conspiracy had as its purpose concealment of the prior conspiracy does not lessen the determinative importance of the fact that there was an independent conspiracy to obstruct and pervert justice and that overt acts were committed in furtherance thereof. That appellants could not be prosecuted for conspiring to protect Irene Burke’s prostitution operations does not bar, in this prosecution, the use of otherwise admissible evidence proving the existence of that conspiracy or the com- , mission of an act in furtherance of that conspiracy. Proof of the existence of this prior conspiracy and the appellants’ parjticipation therein establishes the necessary elements of intent and ‘knowledge in, and the underlying motive for, all of the crimes charged in the indictment, and was, therefore, admissible even ; though it proved another crime. (People v. Cohen, 5 N Y 2d 282; People v. Buchalter, 289 N. Y. 181; People v. Peckens, 153 N. Y. 576; People v. McLaughlin, 150 N. Y. 365.) Furthermore, ‘1 ‘ When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in a case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment. ’ ” (People v. Luciano, 277 N. Y. 348, 358, supra; People v. McKane, 143 N. Y. 455, 470, supra.)
According to the appellants the trial court’s refusal to allow their counsel to inspect the minutes of the pretrial testimony of Irene Burke, and omissions in the charge to the jury with respect to the corroboration of accomplice testimony, justify a reversal. During the cross-examination of Irene Burke, defense counsel requested that the court examine the Grand Jury testimony of Burke, and, if material variances or inconsistencies be therein found, direct that the People make this testimony available to the defense. (People v. Walsh, 262 N. Y. 140.) The court, upon finding no material variance in her testimony given before the Grand Jury and at the trial, denied this request. Three weeks after the termination of the cross-examination of Burke and after our decision in People v. Rosario (9 N Y 2d 286), a request was made for the pretrial testimony of Irene Burke and for the resumption of her cross-examination. This request was denied.
*201 Upon the record before us it cannot be said that the Trial Judge abused the discretion vested in him by refusing to allow further cross-examination of Burke. Without such an opportunity to cross-examine, the defense counsel lacked the condition precedent to obtain the pretrial testimony, and thus their request was properly denied. Our decision in People v. Rosario (supra), which gives defense counsel the right to utilize the pretrial statements of a witness upon cross-examination of that witness, does not curtail the right of the trial court to determine the scope and extent of cross-examination (People v. Rosario, 9 N Y 2d 286, 290). Unless abused, the exercise of that discretion is final {People v. Gorge, 301 K Y. 198). Where, as here, the court examined the pretrial testimony, the People’s case has been closed and the cross-examination of its witness concluded, the application for Burke’s pretrial testimony was not timely.
Appellants’ criticisms of the court’s charge are groundless. The instructions given the jury in the exact language of People v. Dixon (231 N. Y. 111, 116) were in all respects proper and followed the standards prescribed by this court. (See People v. Goldstein, 285 N. Y. 376, 382-383.) The requests to charge which were refused were either not germane or, if pertinent, had been adequately covered in the main charge. The appellants fail to recognize the difference in the roles of the court and the jury where the corroboration of accomplice testimony is the issue.
To determine whether the evidence corroborating the testimony of an accomplice is sufficient to submit the question of the defendant’s guilt to the jury, “ The court * * * should be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime ” (People v. Elliott, 106 N. Y. 288, 292, citing the rule of People v. Hooghkerk, 96 N. Y. 149). If the testimony tends only to establish the credibility of the accomplice, it is insufficient as a matter of law, and should not be submitted to the jury (People v. Kress, 284 N. Y. 452; People v. Nitzberg, 287 N. Y. 183). If the crime charged is of such a nature, such as bribery, that the corroborating evidence must tend to show that defendant committed the crime, the existence of such evidence is a question of law for the trial court to determine before submitting the question of guilt to the jury. (People v. Mullens, 292 N. Y. 408.) Once the trial court has determined that the evidence, if believed by the *202 jury, does not tend solely to establish the credibility of the accomplice, but does tend to connect the defendant with the commission of the crime, or, where necessary, tends to show that defendant committed the crime, it is for the jury to believe or disbelieve the corroborating evidence and whether it is sufficient to satisfy them of defendant’s guilt (People v. Elliott, 106 N. Y. 288, supra; People v. Dixon, 231 N. Y. 111, supra; People v. Goldstein, 285 N. Y. 376, supra; People v. Weiss, 7 N Y 2d 139). The jury may consider evidence to be sufficiently corroborative within the meaning of section 399 “if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth ” (People v. Dixon, 231 N. Y. 111, 116).
The remaining assignments of error have been considered and found to be wholly without merit.
The conviction of O’Dowd on the conspiracy count and the conviction of Fiore on count 2 should be reversed, these counts as to O’Dowd and Fiore should be dismissed, and the judgments of conviction should be in all other respects affirmed.
On the appeals of defendants Bogan, Macner, Custodero and Fragetta: Judgments affirmed. Chief Judge Desmond and Judges Dye, Fuld, Froessbl, Van Voorhis and Foster concur.
On the appeal of defendant Fiore: Judgment modified by reversing so much thereof as convicts him under count 2 of the indictment, that count dismissed as to him and the judgment otherwise affirmed. Chief Judge Desmond and Judges Dye and Van Voorhis concur with Judge Burke; Judges Fuld, Froessbl and Foster dissent and vote to affirm the judgment as to defendant Fiore.
On the appeal of the defendant O’Dowd: Judgment modified by reversing so much thereof as convicts him of conspiracy, that count dismissed as to him and the judgment otherwise affirmed. Chief Judge Desmond and Judges Dye, Fuld and Van Voorhis concur with Judge Burke; Judges Froessbl and Foster dissent and vote to affirm the judgment as to defendant O’Dowd.
On the appeals of defendants Bogan, Macner, Custodero and Fragetta: Judgments affirmed.
On the appeals of defendants Fiore and O’Dowd: Judgments modified, etc.