James J. CONNOR, Petitioner,

v.

Philip J. PICARD, Superintendent, Massachusetts Correctional Institution, Norfolk, Respondent.

Misc. Civ. No. 68–88–G.

United States District Court,
D. Massachusetts.

Jan. 16, 1970.

James J. Twohig, Boston, Mass., for petitioner.

Bruce NcNeill, Asst. Atty. Gen., Criminal Division, Boston, Mass., for respondent.

## OPINION

GARRITY, District Judge.

Petitioner for habeas corpus, Connor, and a codefendant Landry were found

guilty on March 25, 1966 of murder in the first degree of Davis. The crime was committed on May 1, 1965. The jury recommended that the death penalty not be imposed and petitioner is serving a life sentence. Codefendants named Doherty were found guilty of being accessories. Petitioner's conviction was affirmed on appeal, Commonwealth v. Doherty, 353 Mass. 197, 229 N.E.2d 267, decided August 22, 1967.

The petition for habeas corpus asserts seven numbered grounds for relief, but without specifying in some instances the federal constitutional right relied upon and the exhaustion of available state remedies regarding the particular claim. Accordingly, the court entered an order limiting the hearing to reasons (1) and (3) unless the petitioner should file prehearing statements showing his exhaustion of state remedies with respect to certain grounds and the federal constitutional nature of others. No such statements were received from petitioner previous to the hearing, but at the hearing on the petition for the writ, on motion of the petitioner, leave was granted to include such statements in a brief to be submitted after the hearing. The effect of the court's limiting order, as modified by allowance of the petitioner's motion at the hearing, has been to exclude from the court's consideration three of the seven grounds asserted in the petition, numbers (2), (4) and (5).[1] At the hearing in this court, the petitioner was represented by the same attorney who represented him at the trial and in the Supreme Judicial Court on appeal.

### Findings of Fact

The evidence at the trial was to the effect that shortly before 3:00 A.M. on May 1, 1965 petitioner and Landry came to the third floor apartment in Boston in which Davis was killed in response to urgent telephone calls from the Dohertys

that Davis was threatening them and their children with two revolvers. Before Connor and Landry arrived, Davis had fallen asleep on a couch in the den and had been disarmed by Mr. Doherty. When they arrived at the house, Connor and Landry rushed up the stairs and Mrs. Doherty pointed to the sleeping or dozing Davis as the one who had been threatening her family. Landry put a shotgun in Davis's belly and said, "Hey, hey" twice and, as Davis was awakening, shot him in the belly. Landry and Connor picked Davis up, one under each arm, dragged him to the doorway and let him drop down the stairs. Davis was left sprawled out on the front porch, dead.

Two witnesses identified petitioner as having accompanied Landry. One of them, Betty Moore, was a boarder occupying a room in the Doherty apartment and the other was her friend, Ronald Hayes. Codefendant Mrs. Doherty testified that petitioner was not at her house on the night of the crime. Connor did not testify, but took advantage of the now unique Massachusetts practice, see United States v. Cartano, etc., 420 F.2d 362, 1 Cir., Jan. 12, 1970, of making an unsworn statement to the jury in which he said he was not on the premises on the night of the crime.

The grand jury received evidence in June 1965 but took no action. It received further evidence in August and returned an indictment on August 4, 1965 charging Landry "and John Doe * * *" with the murder. On August 9 the Commonwealth filed a motion to amend the indictment by substituting petitioner's name for John Doe and the motion was allowed after a hearing at which no evidence was introduced.

During the period of approximately seven months between the indictment and the trial, defendants endeavored without success to interview Betty

---

1. One of the excluded grounds, number (4), was nevertheless briefed by the petitioner and has been considered by the court. It claims prejudice from denial of petitioner's motion for severance because a bill of particulars filed in the case against one of the co-defendants contained an allegedly inflammatory description of the killing. This ground is obviously without merit.

Moore, who was held in protective custody by the prosecution. Petitioner also sought to obtain a copy of her testimony before the grand jury in support of his motion to quash and dismiss the indictment on the ground that no evidence before the grand jury indicated that he was the "John Doe" intended to be arrested.

At the trial petitioner and other defendants unsuccessfully sought disclosure by the prosecution of Moore's grand jury testimony, after she had admitted on crossexamination that she had testified falsely before the grand jury in June 1965. She testified that she had committed perjury before the grand jury in June because of threats by a relative of the Dohertys and that she told the truth to the grand jury in August. When the defendants, including the petitioner, moved that the prosecution be required to furnish the defense with a transcript of Moore's testimony before the June grand jury, the trial judge denied the motion explaining that the method which should be pursued by the defendants was to get the stenographer who had transcribed the grand jury minutes. The judge suggested that the prosecution attorney find out during recess the name of the stenographer and let defense counsel know so that they might bring the stenographer to the trial. So far as appears, none of the attorneys took any action in line with the court's suggestion. During further crossexamination, the defense attorneys elicited repeated admissions from witness Moore that she had committed perjury before the grand jury in June. The contents of Moore's grand jury testimony were undisclosed in the state courts and not offered in evidence in this court.

*Conclusions of Law*

■ The only substantial issue presented by the petitioner is the first part of ground (3) relating to petitioner's failure to obtain a copy of Betty Moore's testimony before the June grand jury. We shall therefore first discuss summarily grounds (1), (6) and (7) and the second part of ground (3). Ground (1) is that the amendment of the indictment to substitute Connor's name for John Doe was a violation of the Fifth Amendment of the Constitution of the United States.[2] But it is well settled that the due process clause of the Fourteenth Amendment does not make applicable to the states the grand jury requirement of the Fifth Amendment. Hurtado v. California, 1884, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232; Beck v. Washington, 1962, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98. The second part of ground (3) is that petitioner's counsel was denied the opportunity of interviewing material witnesses in the same manner as the prosecution, to which they were constantly available. Apart from its having scant support in the record and petitioner's reliance in this regard upon the Massachusetts Declaration of Rights, petitioner failed to object to the rulings of the judges of the Superior Court when the matter was brought before them in pretrial hearings and did not claim error on this score in the Supreme Judicial Court. He has probably waived this ground. In any event, he has not exhausted available state court remedies.[3] Ground (6) is that the trial court erred in excluding a

---

2. In support of this and all other grounds for relief, petitioner has argued indiscriminately on the basis of the statutes and constitution of the Commonwealth of Massachusetts, as well as upon federal grounds. No effort has been made in the petition or in petitioner's brief to particularize the federal rights allegedly violated in the state courts apart from general references to various provisions of the federal Bill of Rights and the Fourteenth Amendment.

3. Codefendants did preserve a similar point on appeal, without success. However, this does not excuse petitioner from seeking relief in the state courts because this ground involves a consideration of facts and circumstances of the case as they relate to a particular defendant.

certain line of questioning on cross-examination of witness Moore designed to test her credibility. Despite this court's orders before and at the hearing, petitioner's brief does not attempt to show the involvement of a federal constitutional right in this contention apart from the general statement that trial procedures must be fundamentally fair. If there was error, it does not approach constitutional dimensions. Ground (7) is likewise illusory. It alleges an error in the case against codefendants Doherty, which the petition asserts was prejudicial to petitioner because severance was not ordered. Despite this court's orders, petitioner has made no attempt to demonstrate an exhaustion of available state court remedies with respect to this ground. 28 U.S.C. § 2254. Furthermore, this ground was virtually abandoned in petitioner's brief in this court, which devotes but a single sentence to the point, including a surprising disclaimer of prejudice to the petitioner.

The issue with respect to petitioner not having received a transcript of Betty Moore's testimony before the June 1965 grand jury, denominated the first part of ground (3), was preserved at the trial and argued on appeal. It has not been disputed by the Commonwealth that the petitioner demonstrated a "particularized need", Pittsburgh Plate Glass Co. v. United States, 1959, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, for disclosure of Betty Moore's grand jury testimony inasmuch as she admitted perjury before the June grand jury. Regarding defense counsel's demand at the trial that the transcript be made available to them for purposes of further cross-examination, it should be noted first that the *Pittsburgh Plate Glass Co.* case did not decide whether such a procedure should be followed or whether the trial judge should examine the transcript *in camera* to ascertain the nature of the inconsistencies between the witness's testimony at trial and previously. Dennis v. United States, 1966, 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973, holding

that the determination of what may be useful to a defendant can properly and effectively be made only by an advocate, was not decided until June 20, 1966, approximately three months after the completion of petitioner's trial. However, in Commonwealth v. Ladetto, 1965, 349 Mass. 237, 244–245, 207 N.E.2d 536, the Supreme Judicial Court anticipated the holding in *Dennis* and, on petitioner's appeal, applied the *Dennis* principle in deciding the discovery question against him, two justices dissenting. The Supreme Judicial Court held that the trial judge did not deprive the petitioner of access to the minutes of the June grand jury and that counsel's failure to pursue the course indicated by the trial judge, of procuring the attendance of the grand jury stenographer, was responsible for any prejudice to him.

In this court both parties have argued the question of the proper application of the *Dennis* rule without alluding to the necessary consideration whether it applies to criminal trials in state courts under the due process clause of the Fourteenth Amendment. It seems clear that it does not, because not "fundamental" nor "necessary to an Anglo-American regime of ordered liberty." See Duncan v. Louisiana, 1968, 391 U.S. 145, 149–50 n. 14, 88 S.Ct. 1444, 1448, 20 L.Ed.2d 491. The Supreme Court based its decision in *Dennis* upon its supervisory powers over federal district courts and not upon a constitutional right of the accused. Broeckel v. Green, N.D. Ohio 1967, 298 F.Supp. 249, 253. Discovery rights such as inspection of grand jury minutes are not of constitutional origin and they represent exceptions to the general rule concerning discovery in criminal cases, Corbett v. Patterson, D.Colo.1967, 272 F.Supp. 602, 609. There has been no hint in Supreme Court cases that this procedure of disclosing grand jury minutes was thought to be compelled by the due process clause of the Fifth Amendment. United States ex rel. Bund v. Lavallee, 2 Cir.1965, 344 F.2d 313, 315. Nor has

there been any suggestion that the rule of the *Dennis* case should be applied retroactively.

 Therefore any error by the courts of Massachusetts in deciding whether petitioner was entitled at trial to disclosure of witness Moore's grand jury testimony, at least as asserted by petitioner in the Supreme Judicial Court and in this court,[4] involved the interpretation of a rule of state law and not a "violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c) (3). With respect to the scope of federal habeas corpus jurisdiction, the identity of the state and federal discovery rules is immaterial.

Accordingly it is ordered that the petition be denied and the case dismissed.

---

4. In United States v. Lavallee, *supra*, at 315, it is stated, "It could be argued with some force that when the Grand Jury testimony is exculpatory and the trial testimony inculpatory \* \* \* failure to make the Grand Jury testimony available on request is within the principle of decisions holding it to be a denial of due process for the prosecutor to fail to disclose known exculpatory evidence to the defense. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 [and other cases]." We intimate no opinion on any such contention in this case. Suffice it to note that the point has never been raised by petitioner in the Massachusetts courts. See Lamoureux v. Comm. of Mass., 1 Cir. 1969, 412 F.2d 710, 711.